```
                   UNITED STATES DISTRICT COURT
                     DISTRICT OF CONNECTICUT


                                    :
TFS ENERGY, LLC,                    :
                                    :
     Plaintiff,                     :
                                    :
V.                                  :   CASE NO. 3:06-CV-191 (RNC)
                                    :
ANTHONY CAMPISI,                    :
                                    :
     Defendant.                     :
```

RULING AND ORDER

Plaintiff TFS Energy, Inc. ("TFS") brings this diversity case against its former employee, Anthony Campisi, claiming breach of contract, breach of a promissory note, intentional misrepresentation and breach of fiduciary duty.  Defendant counterclaims for defamation and breach of contract.  TFS has moved for summary judgment on all the claims and counterclaims; the defendant seeks partial summary judgment on the counterclaims.  For reasons that follow, plaintiff's motion is granted and defendant's motion is denied.

I. Summary Judgment

Under Federal Rule of Civil Procedure 56(c), summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Summary judgment is a procedure for avoiding unnecessary trials on claims or defenses that are

legally insufficient.  The availability of summary judgment thus depends on whether the evidence raises a proper issue for trial.  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Id. at 249-50 (internal citations omitted).  In determining whether the evidence raises a jury issue or is so one-sided that the moving party must prevail, the evidence must be viewed in a manner most favorable to the nonmoving party.  Id. at 255.  Evidence favorable to the nonmoving party is to be credited if a reasonable jury could credit it.  Other evidence is to be disregarded unless a jury would have to accept it as true.  See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150-51 (2000)(discussing identical standard under Fed. R. Civ. P. 50).

II.  Background

The record, viewed most favorably to the defendant, would permit a jury to find the following material facts.  TFS engages in the business of brokering trades of energy-related commodities between large energy companies.  It matches buyers with sellers, represents both parties to each transaction and collects commissions from both sides.  In the market in which TFS conducts business, prices can change substantially in a short time.

At the time of the events underlying this case, TFS authorized its brokers to quote a price to a buyer even though the broker did not have a counterparty to the transaction, in other words, a party willing to sell at the quoted price.  For convenience, I will refer to this as an "out trade."  TFS required its brokers to promptly notify their managers of any out trade and seek a counterparty in order to finalize the transaction before the end of the business day.  If a seller could not be found to enter into the trade at the quoted price, and the buyer wanted to proceed, TFS would complete the trade and make the buyer whole by covering the difference in price.  TFS limited the amount of risk a broker could take on an out trade to $20,000.

In April 2005, TFS employed the defendant as a broker pursuant to a written agreement.  The agreement provided that the defendant would "[c]omply with all TFS policies and procedures" (Emp. Ag. ¶ 3(b)(iii)) and "act in all respects professionally and in the best interests of [the company], its reputation and goodwill."  (Emp. Ag. ¶ 3(b)(iv).)  Section 6 of the agreement gave TFS the right to summarily terminate the defendant for cause if he committed "any act of dishonesty," (Emp. Ag. ¶ 6(a)(ii)) was guilty of any "serious or persistent neglect in the discharge of his duties,"  (Emp. Ag. ¶ 6(a)(iii)) or was excessively absent or tardy.  (Emp. Ag. ¶ 6(a)(v).)  The agreement provided that if

he was terminated for cause, he would have no claim against the company for damages or otherwise except for accrued salary. (Emp. Ag. ¶ 6(a).)

On September 27, 2005, the defendant executed an order to buy a financial swap from BP Corp. North America, Inc. for the price of $119.75.  When he executed the order, he did not have a counterparty willing to sell at this price.  In accordance with TFS policy, he promptly notified Keith Kelly.  TFS could have completed the trade without delay at a loss of between $3,000 and $5,000, but Kelly gave the defendant latitude to finalize the trade by the end of the day in the belief that he might be able to reduce the loss.

Several hours later, the defendant notified Kelly that Tim Pearce, a manager at Direct Energy Marketing Ltd., had agreed to sell the financial swap for the quoted price of $119.75, but the processing of the trade would have to wait until the next day when Pearce returned to his office.  At Kelly's request, the defendant completed a report documenting that Direct Energy had agreed to consummate the trade at the original price.  The report signed by the defendant states, "The position fit Direct Energy's (Tim Pearce) book and he consummated the trade."  In fact, the defendant had spoken with Pearce by telephone and Pearce had not agreed to the trade.[1]  The defendant's specific representations

---

[1]   A transcript of the recorded telephone call shows that the defendant asked Pearce if would be able to "sneak in a trade"

that Pearce had committed to do the trade at the original price was therefore false. As a result of the defendant's representations, TFS did not look for another counterparty.

The next day, the defendant initialed a "trade ticket" listing BP and Direct Energy as parties to a trade for $119.75. This trade ticket was false because Direct Energy had not agreed to the trade. The New York Mercantile Exchange ("NYMEX") cleared and processed the trade and sent confirmation notices to BP and Direct Energy. Direct Energy subsequently informed TFS that it had never agreed to the trade and did not intend to make the trade. TFS had to locate another seller to complete the trade and incurred a trading loss of $270,600 due to market fluctuations.

On September 29, TFS sent the defendant a letter notifying him that his employment was terminated effective immediately for cause under section 6 of the employment agreement. When the defendant was hired by TFS, he executed a promissory note for the sum of $60,708.15. The note provided that this amount would be immediately due in the event the defendant was terminated for cause as defined in the agreement. TFS demanded payment but the

---

and Pearce said "Uh, nope. Not from where I am right now." The defendant asked, "Is there any way that it's possible we could work this out where you could help me out? Maybe tomo – are you gonna be in the office tomorrow? Pearce responded, "Uh, who knows tomorrow. But, no. I - I - as I said, I mean, it's – it's one of these things that, you know, it's – is not conducive to me."

defendant did not repay any amount.

After his employment was terminated, the defendant sought employment elsewhere but was not hired.  He attributes this to defamatory statements allegedly made by TFS.  He contends that the termination of his employment was wrongful and claims that he is entitled to a performance bonus for the third quarter of 2005, as well as other compensation.

III. Discussion

　　A.　TFS's Claims

　　　　1.　Breach of Employment Agreement

TFS claims that the defendant breached the employment agreement by failing to "act in all respects professionally and in the best interest of [the company]," and that it properly terminated his employment under section 6 of the agreement for "an[] act of dishonesty."  The defendant responds that he was given leeway to manage the BP out trade and believed he could rely on Pearce to bail him out, as he had in the past.

Based on the record before the Court, TFS must prevail on this claim.  For whatever reason, the defendant falsely represented to TFS that Direct Energy had agreed to serve as the counterparty to the BP out trade at the original price and subsequently prepared and submitted a false trade ticket.  This conduct was dishonest and entitled TFS to summarily terminate the defendant's employment.  A reasonable trier of fact could reach

no other conclusion.[2]

Though TFS is clearly entitled to recover for the defendant's breach of the agreement, the amount of damages is disputed and cannot be determined on the present record. Accordingly, summary judgment will be granted to TFS on this claim as to liability only, with a hearing on damages to follow.

### 2. Intentional Misrepresentation

To prevail on its claim for intentional misrepresentation, TFS must prove that (1) the defendant made a false statement of fact, (2) knowing it was untrue, (3) in order to induce TFS to act, (4) which TFS did to its detriment. See Suffield Dev. Assoc. Ltd. P'ship v. Nat'l Loan Investors, L.P., 260 Conn. 766, 777 (2002). All these elements are clearly satisfied. The defendant falsely represented that Direct Energy had committed to serve as the counterparty for the BP out trade at the original price, he knew this was untrue, he made this representation to satisfy Kelly that a counterparty had been found, as a result of the representation TFS did not seek another counterparty, and TFS

---

[2] TFS contends that it was entitled to terminate the defendant's employment based on excessive absenteeism. The defendant responds that TFS should have allowed him to classify his absences as personal days, sick days or bereavement days. The record supports the view that TFS could have terminated the defendant's employment for absenteeism as early as August 2005. But the termination was the direct result of the defendant's dishonest conduct in connection with the BP out trade, which in itself provided adequate cause for the termination under section 6 of the agreement. It is therefore unnecessary to decide whether the defendant's absenteeism also justified his termination as a matter of law.

ended up incurring a trading loss of $270,600.  Here again, however, the amount of damages is uncertain, so summary judgment will be granted on this claim as to liability only pending the hearing on damages.

### 3. Breach of Fiduciary Duty

TFS claims that the defendant breached his fiduciary duty by lying about the status of the BP out trade over the course of two days.  Thus, this claim is essentially the same as the claim for intentional misrepresentation.  The defendant responds that the evidence does not support a finding that he owed a fiduciary duty to TFS or that any such duty was breached.

Generally speaking, an agent is a fiduciary with regard to matters within the scope of his agency.  See Hamden Hall School, Inc., 149 Conn. 545, 552 (1967).  The employment agreement in this case is consistent with this principle.  It required the defendant to "faithfully serve TFS," (Emp. Ag. ¶ 11(d)(v)) use "best endeavors at all times to promote the development of TFS's business and reputation," Id., and "maintain the highest standards of honesty and fair dealing."  (Emp. Ag. ¶ 11(d)(vi).)  Accordingly, the defendant was a fiduciary with regard to matters within the scope of his agency.

As a fiduciary, the defendant owed TFS a duty to act honestly.  For reasons discussed above, a jury would have to find that this duty was breached.  Accordingly, summary judgment will

enter as to liability only on this claim.

###### 4. Breach of Promissory Note

Under New York law, which governs TFS's claim based on the promissory note, "proof of a promissory note, demand and nonpayment establishes a prima facie case for recovery . . . [and] entitles the promisee to judgment as a matter of law." See, e.g., Internet Law Library, Inc. v. Southridge Cap. Mgmt., LLC, No. 01 Civ. 6600(RLC), 2005 WL 3370542, at *6 (S.D.N.Y. Dec. 12, 2005). TFS has made this showing. Under the terms of the note, the loan became immediately due and payable when the defendant was properly terminated for cause. Defendant contends that he is not liable on the note because the termination was improper. As discussed above, however, a jury would have to find that he committed a material breach and was properly terminated for cause. Accordingly, TFS is entitled to summary judgment on this claim.

##### B. Defendant's Counterclaims

###### 1. Defamation

To prevail on his defamation claim, the defendant must show that: "(1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement." Cweklinsky v. Mobil Chem. Co., 267

Conn. 210, 217 (2004). In opposing TFS's motion for summary judgment, the defendant relies on hearsay statements and an inference that defamation by TFS is the only "logical conclusion" for why he was not hired by other companies. This is insufficient to raise a proper issue for trial. See Albert v. Loksen, 239 F.3d 256, 266-67 (2d Cir. 2001). Accordingly, TFS is entitled to summary judgment on this claim.

### 2. Breach of Contract

The defendant claims that the employment agreement entitles him to a performance bonus for the third quarter of 2005. This claim is legally insufficient because it is contrary to the plain terms of the agreement.

The agreement provides that in the event of a termination for cause, the employee "shall have no claim for damages or otherwise against [the company] in respect of such termination except for salary accrued prior to the date of termination." (Emp. Ag. ¶ 6(a).) Under this provision, once the defendant was properly terminated for cause on September 29 (the date of the termination letter), he had no right to "damages or otherwise" except for "salary accrued prior to [that] date." Moreover, the agreement provides that a bonus would be "deemed earned only if [the defendant] complie[d] with his material obligations under [the] Agreement." (Emp. Ag. ¶ 4(j).) Since he committed a material breach, no bonus was "earn[ed]."

The defendant also claims that TFS is obligated by the agreement to compensate him for days he refrained from working for competitors after his employment was terminated by TFS.  This claim is also contrary to the plain terms of the agreement.

The defendant relies on paragraph 11 of the agreement, entitled "Competitive Activities."  Under this provision, if he (not the company) terminated the agreement before the expiration of its term, the company would have discretion to pay him compensation, provided he submitted a written demand for payment disclosing the name of his new employer and the precise nature of his contemplated new employment. (Emp. Ag. ¶ 11(d).)  This provision does not apply because TFS terminated the agreement, not the defendant; there is no allegation or evidence that the defendant ever delivered the requisite written demand; and no reasonable jury could find that the company's discretionary refusal to pay constitutes a breach of the agreement.  Thus, TFS is entitled to summary judgment on this claim.

### 3.   Unjust Enrichment

As an alternative to his claim for breach of the agreement, the defendant claims that he is entitled to an amount equivalent to his performance bonus under a theory of unjust enrichment. TFS contends that the company has not been unjustly enriched in view of the terms of the employment agreement, which govern the parties' rights and liabilities.  I agree.

Whether TFS has been unjustly enriched depends on the conduct of the parties and the extent to which the defendant's claim is consistent with terms of the agreement.  See Rent-a-PC, Inc. v. Rental Mgmt., Inc., 96 Conn. App. 600, 605-06 (2006). Here, we have unclean hands on the part of the defendant and an enforceable agreement that excludes payment of a bonus.  The mere fact that there might be an amount the defendant would have received under the agreement had he not been properly terminated for cause does not mean the company has been unjustly enriched.

IV.  Conclusion

Accordingly, the plaintiff's motion for summary judgment is granted and the defendant's motion is denied.  The Clerk will enter a judgment in favor of the plaintiff on the claims in the complaint as to liability only and in favor of the plaintiff on the counterclaims, which are dismissed.  The case will be referred to Magistrate Judge Martinez for a hearing on damages.

So ordered this 17th day of February 2009.

                                                  /s/ RNC
                                              Robert N. Chatigny
                                    United States District Judge